We'll call United States v. Russell, which is 18-2174. Good morning, your honors. My name is Alicia Lopez. I am here today on behalf of the defendant, Melvin Russell. May it please the court, I intend to reserve a few minutes at the end of my time. Mr. Russell was deprived of a viable defense in this case by the district court's misapplication of Rule 412, and specifically by the district court's refusal to apply two narrow exceptions to the rape shield rule that were created by Congress for just the sort of situation that arose in this case. For the sake of clarity, I would like to address the exceptions one by one. 412b1a states that the court may admit as evidence of specific instances of a victim's sexual behavior, evidence of another encounter if offered to prove that someone other than the defendant was the source of, in this case, an injury to the complainant's vaginal area. Now that is precisely what Mr. Russell sought to do here, where he became aware of an answer that this complainant gave on her SANE exam. She took the SANE exam 24 hours after her alleged encounter with Mr. Russell, and there she was asked, as a matter of course, if she had had consensual vaginal intercourse with anyone else in the preceding five days, and she answered in the affirmative. Now Mr. Russell sought to get this evidence admitted as evidence that somebody other than he could have been the source of vaginal injuries that the complainant's own examining physician described as mild and minor, they were visible only by magnification, and he would later testify they were only potentially indicative of sexual assault. Well, you keep saying that the doctor testified that it was only potentially sexual assault, but one thing you briefly leave out is that that doctor did not do an internal exam. I found that rather significant, that that doctor didn't do an internal exam. He did not perform the pelvic exam, but he had the benefit of his notes and of his own examination of this individual, and I note that the individual who did do the pelvic exam, the SANE nurse, testified that vaginal injuries become abnormal, become troubling when they are visible. So he was privy to the visible injuries, and he described them, you know, it could be a credibility issue for the jury, but he described them as minor and mild and only potentially indicative of sexual assault. And I note, too, that the district court was extremely persuaded by the SANE nurse's testimony. It gave it a lot of primacy. In ruling to exclude the 412B1A evidence, the district court said no, that this connection is too speculative, too tenuous. It likened this case to Pablo, a case that I represent as factually quite different from this one. But the district court gave a lot of primacy to what the SANE nurse had to say and said that she testified that the injuries suggest violent or rough sex and that there was no evidence to the contrary. Because there were multiple, multiple injuries all over her body. There were indeed, but most of those injuries would not go to tending to prove that forcible penetration had occurred. But nurse Eldred did testify that not just the non-vaginal injuries, but the vaginal contusions were indicative of rough handling. She testified that, and then on cross, when asked about it, she demurred. She said, I didn't think I was offering an opinion at all. But to the extent that she did provide one, she said that she was not in the habit or aware that a sequence of events happened. Now she subsequently went on to double down and say that the injuries to extra genital areas of the body were consistent with her account of having been stomped or kicked. These are serious injuries and nobody is trying to minimize them. And the internal vaginal injuries. She said that any time there's a vaginal injury that you can see, that that is an indication of something out of the ordinary. And then she proceeded to testify that consensual sex can lead to vaginal injuries. And she was never asked if that consensual sex has to be rough sex in order to create those injuries. And there was no testimony to suggest that the prior incident involved the kind of sex that could result in those injuries. Did you have to put in that kind of evidence to get over the 412 barrier? I don't believe you did, because neither side elicited testimony determining one way or the other whether this incident of consensual sex could have caused these injuries. She testified that consensual sex can lead to vaginal injuries, but she didn't rule in or out. So neither side put this issue in play. And we can armchair quarterback this. And I wish that there had been testimony elicited on this point, but I don't think there's anything to foreclose us from making the argument that the testimonial evidence permits the inference that the vaginal injuries were caused by consensual sex. Don't you have one major problem in this case, which is the fact that the defendant admitted he raped her? Well, the defendant made a shaky admission after 90 minutes of being alone with an FBI agent who has been described as coercive in the past. Did you put on evidence of coercion here? That's really a habeas question, isn't it? I don't want to dwell on that issue. Nobody is saying that that isn't in play, that that wasn't evidence in the case. But I think that should- Well, Your Honor, I would respectfully submit that the government did not proffer any case law that an admission of this type, or even a real confession, a full-blown confession where somebody attested that a sequence of events happened, they were responsible for it, and then they signed it. Even if you had a confession like that, that without more- What was the language used? After being told and led to this point, but you did this to CE, didn't you? Yeah, I did. Words to that effect. I don't have the language in front of me. But I would submit that this, without more, without overwhelming evidence of guilt, given the magnitude of the right at stake here, my client's constitution- Isn't this a jury question? Why is that not overwhelming evidence of guilt if he admitted he raped her? And I think there were words used, I can't remember specifically, but something more than, we had sex. With all due respect, Your Honor, a confession absent more ought not to be, render any constitutional error- Absent more was the victim's testimony. Two witnesses who saw her before this, the day before this, and afterwards, and testified about the extent of injuries- Yes, they testified, I'm sorry, I didn't mean to speak over you. They testified to the existence of injuries on her neck and face that had not been present the night before. And that goes to our request for a lesser-included jury instruction on assault by striking, beating, or wounding. I would direct the court's attention to U.S. v. Begay, a very similar case in which what mattered most was that notwithstanding other evidence in play in the case, what mattered was that ultimate element of the charge defense, in this case, aggravated sexual abuse. Any evidence tending to prove or disprove penetration is what mattered most because without it, you can't get to your charge. And so here, yes, there was testimony and it was apparently quite persuasive to the district court that this woman was roughed up, mishandled in some way. That does not render what I am saying irrelevant because what I am saying is that evidence that goes to the critical issue in this case, the difference between the charge defense and what should have been the lesser-included offense of assault by striking, beating, or wounding is going to be critically important. And that evidence provided an alternate source for injuries that reasonable people can disagree about but that an examining physician termed minor and mild. And there is no conclusive evidence, there's no conclusive forensic evidence linking my client to this complainant's vaginal injuries. And not for lack of trying, they tested and retested this DNA many times, hoping to get a different result, but oral, vaginal, and cervical swabs taken from this complainant showed none of his DNA. There was testimony he wore a condom. Yes. There was also testimony, inconsistent testimony, that he had penetrated her digitally and there was no testimony that he used a condom on his hand. Yet there was his DNA on her extragenital areas. There was, you will not hear me dispute, that there was evidence from which a jury could convict on the lesser offense. Including his admission. I think the district judge basically said, didn't he, this case is clearly about a sexual attack. The district court, I think, treated this as an open and shut case and conflated injuries to extragenital regions of the body with genital injuries in a move that was strikingly dissimilar from the way this court treated the evidence in U.S. v. Begay, a case that is most instructive on this point. Let's talk about Begay. In Begay, there was expert testimony, a doctor testified for the defense, that it was impossible to tell whether the internal injuries on the child victim were caused by the prior assault or the alleged assault by the defendant. We don't have any of that testimony here. Well, Begay was decided under 412B1C, not 412B1A. I note that at the outset. But there were multiple reasons why the fundamental right of the accused to put on a defense and to cross-examine is equally important in both cases. And I guess at the outset, I would just point out, if we have to have such an overwhelming exculpatory evidence to make a defense under these 412 exceptions, that to me is potentially very disturbing precedent. But yes, the one thing that Begay has over this case is that there was no question that the other encounter that the defendant wanted in could provide causation for the complainant's injuries. Isn't that a, maybe it's disturbing, but in terms of just our mandate, which is to decide what the legally correct result is, several times, I think the first time most explicitly, I think, and tell me if I misheard it, is that you're saying that there was no, neither side presented evidence about whether the vaginal contusions that Nurse Eldred had detected could have caused, or that consensual sex could have caused these vaginal contusions. Correct? That is correct. Neither side did. And Rule 104B, to decide whether there's an adequate foundation for any, the admission of any evidence, including 404B evidence, 408 evidence, 609 evidence, and 412B1A evidence, the district court has to make a preliminary determination by preponderance of the evidence before deciding whether to admit the evidence, correct? Correct. And so Judge Kelly then, under the rules, had to make a preliminary determination whether or not an adequate foundation had existed for the introduction of this 412B1A evidence, right? Presumably, Judge Kelly thought that he did so, but I think one will look in vain in the memorandum opinion and order on the Rule 12 motion to glean much from it, except that a great deal of emphasis was given to testimony that was equivocal. Well, and I'm going to give you some extra time, so don't worry. Okay. Okay. But the point is that whether, regardless of the extent or lack of extent of Judge Kelly's explanation in his order, he was charged under Rule 104B with making that preliminary factual determination before deciding whether to introduce the evidence, right? He was. That was his charge. And nobody said, I think you just acknowledged twice, that there was evidence presented by either side that consensual sex, an alternative explanation for the vaginal contusions, that consensual sex could have caused these vaginal contusions, right? Well, there was testimony elicited from the examining surgeon to that end. That was minor, that the vaginal contusions were, Dr. Gibbs said in his notes, the vaginal contusions were minor and mild, right? And he then- And they could potentially have caused, and that a sexual assault, or consensual sex could potentially have caused this. He did. But nobody, Dr. Gibbs, Nurse Eldred, Dr. Greenwood, I think, nobody has testified that consensual sex could have caused these particular vaginal contusions, right? These particular injuries, nope. Nobody did, and nobody foreclosed that option either. So why isn't that, why aren't we compelled to say there was no abuse of discretion because Judge Kelly made a preliminary factual determination that he was charged with making, there was an absence of evidence to support an adequate foundation for 12-week-one evidence, even if we credit everything you said in your blue briefs? Because Judge Kelly did not ever render that decision. We don't know if that was even in his mind, and he clearly exceeded the bounds of permissible choice by not acknowledging that there was evidence here, the type of evidence that defenses are built on, tending to show absence of forensic evidence, a complainant who is highly unreliable and had a blood alcohol content that was four times the legal limit, a complainant whose own medical profile, because she suffered from advanced cirrhosis in the testimony of the same nurse, would have made her more prone to injure in certain areas and to be adversely affected in terms of her healing time. Those things added up to create a connection that was not speculative and tenuous and was precisely the reason that 412B1A was enacted. Thank you. Because I took up so much of your time, I'm going to give you four extra minutes. I thank you. We'll hear from the appellee. May it please the Court. Good morning. My name is Jennifer Rizzoni, and I'm an Assistant United States Attorney in Albuquerque. Your Honors, the appellant's case here lives and dies by his ability to essentially divorce the injuries to the victim's body from the victim's vaginal area. And the way in which he does that is he focuses in on Dr. Gibbs' testimony. And I'm sure that all of you have had the opportunity to address these types of cases, and so I want to back up for a moment and just give you what happened here and what happens in most of these cases when a sexual assault victim goes to the hospital or her doctor's office or his doctor's office. First they're seen by basically a general practitioner, lots of times an emergency room physician, which is what happened here. In this case, the victim had a lot of injuries. They sought out a general surgeon, Dr. Gibbs, to evaluate some of those injuries. A number of CT scans were ordered, and at the same time, Nurse Eldred was called. She is the specialist, the person who is trained in giving SANE exams. So what happened was the emergency room physician saw her, Dr. Gibbs saw her, and Nurse Eldred saw her. Dr. Gibbs is a general surgeon. He evaluated her body. He did not, as you point out, Judge McHugh, do a vaginal exam because he's not trained in that. He's trained in other things because, as Appellant pointed out, the victim here had a lot of health issues. That being said, Nurse Eldred is trained in giving these types of exams. She did a full body exam, and the evidence showed, and her report showed, that the victim suffered 32 bodily injuries and seven additional specific injuries to her vaginal area. There were injuries to her neck, her chest, under her chin, indicative of strangulation, to her arms, her breasts, her abdomen, her thighs, her lower legs, and her buttocks. She had injuries to her external genitalia, including bruising to her mons pubis, an inner top part of her vaginal area, bruising to her hymen and her urethral meatus, and tearing at the top of her vulva, and that was seen with the naked eye. Additional tearing was seen using the use of blue dye. And there were tears- Let me stop you for a minute. Of course. It is true that the report of Nurse Eldred very clearly documents internal vaginal injuries. And the reason this is relevant is because the penalty is much more severe for Mr. Russell if this government can prove penetration than that he just beat her up, right? So- If I may, or there was an attempt. Attempt was also charged in this case. Okay. Attempt to penetrate or penetration. But if he just beat her up badly, it's a significantly different crime. So why isn't it essential to their defense to separate out the surface injuries, the external injuries, from the internal vaginal injuries because the one goes to penetration and the other doesn't? I understand what you're saying. And in this case, I would say, Your Honor, we definitely have to show those vaginal injuries and we can separate those two things out. But in this case, Judge Kelly determined and the evidence showed that this was a sexual assault. This was not a beating. This was a man who decided to violate this woman not only by beating her and using force, as the statute requires, but also by sexually assaulting her. So we have to show there was force. We did that as well. We did that. And then we actually have to show that there was penetration or an attempted penetration. But if, in fact, he beat her up, bit her on the breast, he had a sexual motive, but he, for whatever reason, didn't want to penetrate, didn't try to penetrate, and did not penetrate, we're talking about a different crime with a different punishment, right? If there was evidence, I agree. If there was evidence to say that it was just going to be a beating, but there was no evidence to show that. In fact, there was evidence that prior to this, he was making lewd advances both to the victim and her friend before all of this started. This entire event, I'll call it, was sexual in nature. There was nothing here where this man was just going to beat this woman up. There's nothing to show that in any way, shape, or form, which is why Judge Kelly chose only to give the sexual assault during instruction and not the assault by beating or wounding, striking, beating, or wounding. But if there was evidence that she had consensual sex and she had medical conditions that made her more likely to have contusions internally during consensual sex, isn't that something the defendant should have been able to put on? If there was that evidence, but I believe that what Nurse Eldred said was there had to have been trauma regardless. So some kind of trauma caused the injuries to the victim's vaginal area. Whether they heal slower, whether they were more severe, she definitely said trauma is what caused the injuries. And in addition, as I think, I'm not sure who pointed out, but in addition, there had to have been some evidence that the consensual encounter, if there was one, caused the injuries. And there wasn't. There was no evidence that these injuries could have been caused by a consensual encounter. If there had been, then perhaps Judge Kelly would have ruled differently. But there wasn't any evidence to that. And that does go to the gay. The gay is a very different case than what we have here. We have a question that was asked during a SANE exam that the SANE nurse did note. And then actually what we have after that is a victim who didn't even recall having given that answer, and in fact testified that she didn't recall having had sex for the four years prior to the event here. So it would have been a question asked to the nurse, but the victim on the stand actually didn't agree with the answer that the nurse would have testified to. And so in the gay, you had not only a doctor who couldn't determine where the injuries came from, but you had a child who was saying that the defendant hadn't assaulted her. So you had a number of things going on in that case that are not present in this case and make it very distinguishable. Can I ask you, and I don't want to go to the lesser included offense issue before you're ready. We can go wherever you'd like. But I think the reason I ask it now is because I think it pertains directly to your exchange with Judge McHugh. And I wonder with regard to part of your discussion, troubles me a little bit on the lesser included offense issue, particularly with regard to the inconsistencies in CE's account. Now on the lesser included offense instruction, as I understand it, now you've conceded that Say it again. Striking, beating, or wounding. 113A4. I practiced it, I could do it. That that is a lesser included offense. It appears from Joe that this court has decided that, yes. And so the issue is whether or not there was any evidence to support the lesser offense, which you just said, and it quit on the greater offense, right? And the problem that I'm struggling with, that I'm asking you to help me with, is that you certainly, there's no question that a jury, that there was overwhelming evidence of non-sexual injuries for a variety of reasons. But there is a question about, regardless of the 412B1 evidence, there is a question about whether there was penetration or an attempt to commit penetration. And there are, the woman had enough liquor that I would have died from, I'm pretty sure. And so there was an incredible amount of liquor that was consumed. And there were a whole bunch of different accounts, you've referred to an inconsistency that you're acknowledging, that an inconsistency, perhaps, is irrelevant, because it was an inconsistency with something that no existed, but that was never admitted. And so it seems to me that a fact finder could have reasonably inferred that there is some evidence to equip, to convict on the lesser offense and acquit on the attempt to commit penetration or penetration. Your Honor, well, first of all, this is under abusive discretion. So it was within the discretion of the court to determine whether or not to give that lesser included instruction. That all being said, based on what the court, I think, observed and heard in the evidence that came in at trial, Judge Kelly decided that this was a sexual offense and a sexual offense alone. That there wasn't any intent, based on what he heard and what the jury heard, to simply strike, beat, or wound the victim in this case. They heard evidence about what had happened prior, that people were, that he was making advances both towards the victim and towards her friend. And then, obviously, we have the account of the victim, understanding that there were some inconsistencies in her account. But we also have the evidence from the sexual assault nurse examiner. We have the evidence from Dr. Gibbs. There are these injuries to her vaginal area that were severe enough and were consistent, as Nurse Eldridge testified, with her account of what happened. No question a fact finder could have convicted on the greater offense. We know that they did. But the question I have on the abuse of discretion standard is, we know that if a judge commits an error of law, that, by definition, is an abuse of discretion. And if the substantive standard is whether or not there is any evidence to support the lesser included offense, the judge is legally obligated, as I understand it, to give the instruction on the lesser included offense. And so I'm still struggling a little bit with why Judge Kelly didn't abuse of discretion if there was some evidence on which a fact finder could have acquitted on the greater offense and certainly found guilt on the lesser offense. I hear your struggle, Your Honor. And what I would say is then, in any aggravated sexual abuse case under 2241, you would always have this as a lesser included. And that's just not the way it works. We have United States v. Joe. We have United States v. John. John was also a sexual abuse case. It was actually a case that I tried. And the court found, when there is evidence that this is nothing but a sexual assault, that the lesser included is not necessary. What exactly did he say when he admitted that he sexually assaulted her? Do you recall? In his confession? I believe he said he defined what rape was. I believe it was intercourse without consent. He admitted that he was a violent man. And he admitted to have, I don't know the exact words, but I know that those two phrases came out of his mouth when he was confessing to what had occurred that night. With that, I have a couple of minutes left, Your Honors. I'm going to give you a little more time because I asked you so many questions. Well, I'm not sure necessarily that I have anything more for you. I'm happy to always give back time if you'd like to move back to appellant. Thank you. Thank you. I think I gave you four extra minutes. A few more points I'd like to make, Your Honors, in no particular order. First, Judge Bacharach, you're quite right that the abuse of discretion standard governing lesser included offense, the discretion allotted to the district court judge here was not unfettered and it wasn't even broad. This court directs under US v Toledo and similar cases that the amount of discretion afforded a district court judge in deciding whether or not there was enough evidence in the trial record to justify giving the lesser included offense instruction is, is there any evidence? And here we submit that there was any evidence. From Dr. Gibbs' testimony to the total absence of my client's DNA from anywhere inside this woman's body to the evidence surrounding her makeup, her liver disease, and its potential consequence for bruising where other women might not. That all of these items ought not to have been overlooked and were certainly met the very modest any evidence standard. What about US versus Joe? How do you, how do you distinguish US versus Joe? Because in asking that, I thought, maybe wrongly, that US versus Joe says that there has to be some alternative explanation. And because, you know, if you, if you went on the 412B1A or C issue, that's one solution to this. But if you lose on that issue, there is no alternative evidence supporting an alternative explanation for the vaginal contusions other than Mr. Russell's attempt or actual commission of sexual penetration. Yeah, he wasn't charged with the attempt. But I would say that Joe, all the evidence did point to a single scenario. Here, while let's say we lost on 412, I think we could still prevail on the jury instruction issue because the defense doesn't have to prove who did it. And there was evidence in the record that these injuries were consistent with a consensual encounter. But there's no evidence that she had a consensual sexual encounter. So you're asking us to say that there is some evidence to support an instruction because there was no evidence of point? I think it can be inferred from the absence of DNA. Certainly, I mean, the government knew what it was doing in eliciting testimony from this complainant. They take the major man in her life, her roommate, and they adduce evidence. They get testimony out of her that he's homosexual. No, I thought that homosexual is one thing. And I thought he said that he preferred men, which could mean that he's bisexual. Am I wrong? No, you're right. I hadn't thought of it that way. I suppose that is one interpretation here. But that brings me to my larger point that if I can leave you with nothing else, I would urge the court to look at the advisory committee notes from 1994 on Rule 12, which approvingly cite this court's ruling in Begay for the principle that where the prosecution has directly or indirectly asserted that the physical evidence originated with the accused, the accused must be afforded an opportunity to prove another person was responsible. But there was tons of, I mean, there was evidence in Begay. This was, what, an eight-year-old girl? And there was evidence, specific evidence of a specific man assaulting her previously. Yes, and here there is specific evidence in the form of an admission from the complainant that she had consensual sex with another man as well. And so here, the district court leans heavily into the existence of the vaginal injuries because they can't lean into the reliable testimony of their complaining witness, and they can't lean into forensic evidence that would place my client on the vaginal or cervical swabs. And so the record is replete with references to vaginal lacerations. It's a recurring theme in the government's closing. There's even a sort of optimistic suggestion, well, if he had access to her chest because the DNA shows up there, then he must have had access to her genitals too, right? And by placing the physical injuries to the complainant's vagina at the fore, the government invited this exception. That holding that I spoke to that's in the advisory committee notes is linked to 412B1A. OK, heading back to harmless error because I found the place in the brief. Second time Russell confessed, he confessed he had used a sword to make things go his way. He also admitted that he was a very violent person, really violent. He defined rape as, quote, forcing yourself upon somebody, or if not, having intercourse without their consent, end quote. He then admitted that he raped her. That's two fewer confessions than were at issue in Begay, where the gentleman got a new trial. He confessed three times. As far as I think the counsel for the government suggested that the transcripts reflect that the same nurse testified that there was definitely trauma, I represent to this court and its clerks that we looked closely and carefully reviewed that testimony, and I stand by our representations therein. I would also just note, as far as Begay goes, there have been attempts, I think, to choose to distinguish Begay on grounds that were not cited by this court. This court looked to the fundamental right at issue. It cited seminal Supreme Court case law, like Chambers v. Mississippi, to point out that the right of the accused to cross-examine should not be subject to diminution. And if you are weighing that against any competing government interest, that that competing government interest must be closely examined. And that government interest was not examined at all by the district court in this case. There was simply some comment by the government that this unfortunate complainant would be subject to sexual stereotyping, but no evidence to that end. This was a single adult woman acknowledging a consensual encounter with a man of her choosing in 2019. That just does not seem to me to be a situation that is rife for public embarrassment or the very real interests in keeping evidence excluded that are usually covered by the rape shield rule. Again, speaking to harmless error, again, Your Honor, I would just point to the fact that there were multiple confessions in Begay. Real confessions, a written confession. But the court found that it could not say that the error was harmless when it struck right at what was most critically important about the case, proving forcible penetration, proving who left these injuries. So it is the same issue here, but for the fact that we represent that the vaginal injuries in this case are simply not as severe as the vaginal injuries to the child in Begay. Not that that should matter. But there are two possibilities. There, in both cases, there are two possible donors for that injury or evidence. Let me, you've, they did also charge attempt, attempted rape. And, boy, we've got external injuries that are not just on the upper torso that the witnesses seem to suggest were, that they were clearly new. It sure seems like we've got at least attempt here. They do not go to, excuse me, but they don't go to demonstrating penetration, Your Honor. This is a case in which the complaining witness said that she showered after the fact, but that she did not bathe or douche or wash her genitals. And there is simply no forensic evidence. But if it was an attempt, there wouldn't be any forensic because it wasn't consummated. The jury returned a verdict on aggravated sexual abuse. We represent that this case might have had a very different outcome if there had been a lesser included instruction on assault by striking, beating, or wounding. Okay, you're, with the four additional minutes, I just wanted to let you know you're almost five minutes over time. All right, well then I apologize and thank you for your time. No, you don't need to apologize. We appreciate your excellent advocacy and appellee's excellent advocacy. And we went, allowed you all to go over time because it was so helpful for both sides. This matter's submitted, court is in recess until further call.